Walter E. GARRIS, Plaintiff-Appellee,

v.

G. F. ROWLAND, Officer, Fort Worth Police Department, and City of Fort Worth, Texas, Defendants-Appellants.

No. 81–1215.

United States Court of Appeals, Fifth Circuit.

June 24, 1982.

Richard E. Henderson, Asst. City Atty., Fort Worth, Tex., for defendants-appellants.

Don Gladden, Fort Worth, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and THORNBERRY and GARZA, Circuit Judges.

GARZA, Circuit Judge:

Plaintiff-Appellee, Walter E. Garris, brought this 42 U.S.C. § 1983 action against Defendants-Appellants, Officer G. F. Rowland, the Fort Worth Police Department and the City of Fort Worth, Texas, alleging a violation of his civil rights resulting from his unlawful arrest in March, 1978. Garris successfully recovered $25,000 in damages after a jury trial in the United States District Court for the Northern District of Texas who ordered expunction of all official records reflecting Garris' arrest and detention. Defendants-Appellants now appeal. We affirm in part and reverse in part.

## FACTS

It is indeed an understatement to suggest that the record before us discloses an unfortunate set of circumstances bordering on the absurd. This case truly involves a tragedy of errors. *Cf. Rodriguez v. Ritchey,* 556 F.2d 1185, 1186–88 (5th Cir. 1977) (en banc), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978). Because of the unique record before us, we set forth the relevant facts in detail.

*Day 1: The Incident That Never Was*

On the morning of March 8, 1978, an unknown person stopped two fifth-grade female students on their way to Westcreek Elementary School in South Fort Worth to ask them directions to a nearby high school. This incident was observed by a parent of a student who reported what she saw to the principal of Westcreek, Charles Franklin. Because of problems which had been experienced in that area, Mr. Franklin telephoned Officer Charles Gillespie who was the school district's liaison officer with the Fort Worth Police.[1] Franklin testified that he related to Gillespie the incident involving the conversation between the adult male in a green car and the schoolchildren as it was revealed to him by the parent. He stated that he did not inform Gillespie that any child solicitation had occurred.

Officer Gillespie then contacted his partner, Fort Worth Police Officer G. F. Rowland, and informed him that Franklin had called and revealed that he had received information that someone had attempted to pick-up two schoolchildren. Believing a solicitation to have occurred, Gillespie and Rowland proceeded to the Westcreek Elementary area and surveyed the area in an effort to locate the driver of the green car. They did not, however, go to the school to discuss the matter with either Principal Franklin or the schoolgirls, whose identities at this point were unknown. Neither was an attempt made to contact or determine the identity of the parent who had observed the incident. During that day, Principal Franklin made an announcement over the school's intercom requesting the two girls to come forth. The schoolchildren came forth and told their principal that a man had stopped them and had only requested directions to several schools in the area, including a nearby high school; they stated

---

1. Gillespie's official position as an employee of the Fort Worth Independent School District

was Area Advisor to the court-related office.

that the person had not tried to get them into his car. Later in the day, after returning from their unsuccessful attempt to locate the suspect, Gillespie telephoned Franklin to determine the full details of the incident. Contrary to Principal Franklin's testimony, Gillespie stated that Franklin told him that the schoolgirls said the driver had asked them to "show me where the school is." This harmless incident of March 8th set the stage for the sad, though incredible, events upon which this lawsuit is premised.

### Day 2: Guilt By Association Assumed

The following morning, on March 9, 1978, Walter Garris travelled to the Westcreek Elementary School area in connection with his employment as a landscape architect-site planner with the Department of Housing and Urban Development. He had been requested to evaluate a site for a proposed construction project, and in performing such an evaluation, he was required, among other things, to measure distances of right-of-way as well as to examine the entire neighborhood. Garris testified at trial and upon polygraph examination that he spoke to no one while making his report.

On this same morning, Joan Massengale was driving her son to school at Westcreek Elementary when she passed the scene where Garris was performing the survey. As she related to Principal Franklin, she observed Garris standing outside his car,

and she believed he was talking to two small schoolchildren. She proceeded past the site, made a U-turn, and returned where she obtained the license plate number of Garris' car.[2] She continued to Westcreek Elementary and there informed Franklin of her observations. Franklin again phoned Officer Gillespie to report the incident as it had been related to him. Once again the record testimony conflicts as Officer Gillespie asserts that Franklin indicated to him that "the suspect was back." After his conversation with the principal, Gillespie and Rowland again returned to the Westcreek area to see if the suspect could be located. Neither Gillespie nor Rowland went to the school although police officer John Barton spoke with both Franklin and Mrs. Massengale, wrote up an incident report, and ran a check to determine to whom the license plate number was registered. Unlike the previous day, no suggestion was tendered nor attempt was made to determine who the children were or what, if anything, was said to them.

### Day 3: The Bad Affidavit

On March 10, 1978, having obtained Garris' name from tracing the license number, Officer Rowland immediately swore out an affidavit to obtain a warrant for Garris' arrest for the offense of child solicitation. In the affidavit which we set forth at the margin,[3] Rowland stated the facts as he

**2.** The police incident report written by Officer John Barton indicates that Mrs. Massengale later reported that when she made her U-turn, the suspect walked hurriedly back to his car and appeared to be covering his face.

**3.** The uncorrected text of Rowland's affidavit is as follows:

Before me, the undersigned authority, on this day personally appeared, G. F. Rowland, who, after being duly sworn upon his oath deposes and says that he has good reason to believe and does believe that Walter E. Garris did, on the 3rd day of March, 1978, did then and there, knowingly attempt to entice several young female children to enter his vehicle with the intent to take them from the protection of parent or guardian. He further states that his reason for believing the same is based upon the following facts:

1. a white male subject was seen by complainant, Joan Massengale, white female, 6532 McCart Ct., at the intersection of 6300 McCart Avenue at Westcreek Dr., talking to several young female children, at 0820 hours 3-9-78.
2. The complainant observed the children suddenly break and run from the subject. The complainant turned around to see what was happening and as she approached the white male, described as white, 6′ 2″, 200 pounds, neat, well dressed, with a fefinate, black mustache, approximately 50 years of age, walked rapidly to his car, described as a green, 4-door, plain (not a lot of chrome) license PJJ–969. Complainant turned around again to get a better look and the subject tried to cover his face with his hands and drove away fast.
3. Complainant reported incident to Mr. Franklin, principal, Westcreek Elementary,

knew them, but made the crucial mistake of misrepresenting certain material facts as being within his personal knowledge. Perhaps the most material misrepresentation was the following:

> Young female students envolved [sic] in encounter with subject, all know [sic] to be reliable, can describe the man trying to get them into his car. How he asked them the location of other schools, Wedgewood Middel [sic] and Southwest High.

Of course, at this point in time, Rowland had spoken to no one involved in these incidents or in the reporting thereof, and thus was unaware that a simple check would have revealed that no one had ever attempted to solicit anyone. Ironically, on this same day, Officer J. F. Terrell was assigned to follow-up on Officer Barton's incident report of the previous day, and he learned that the schoolchildren involved in the March 8th incident had stated that no one had tried to get them into the car. Had Officer Terrell checked with Officer Barton, he would have learned that a warrant was being sought for Garris' arrest. Although the charges were apparently unfounded, Terrell made no attempt to correct the error since department policy called for him to merely submit his follow-up report which he did on March 15, 1978.

Based upon the misrepresentations in the warrant and unaware that material facts contained within were the product of fourth-hand hearsay, a Tarrant County Magistrate issued a warrant for Garris' arrest on March 10, 1978.

*Day 4: The "Unfounded" Arrest*

During the next few days, the police department was unable to successfully execute the warrant. It is also to be noted that Rowland made no further investigation into the incident during this time. Finally, on the morning of March 14, 1978, it was determined that the warrant would be executed at Garris' work place, the Dallas Regional Office of HUD. Officer Rowland and Officer Gillespie together with a member of the Fort Worth Fugitive Squad and a Dallas police officer proceeded to the regional office and were informed by a supervisor that Garris could be found at the Dallas Area Office of HUD. Proceeding to the area office, the four officers informed the office director of their warrant for Garris' arrest. Having been called unsuspectingly into the director's office, Garris was told that he was charged with soliciting a youth on March 3, 1978, a date which Rowland had incorrectly supplied on his affidavit. Plaintiff immediately responded that such a charge was mistaken. After talking the police out of handcuffing him, Garris was escorted by the four officials from the office in front of some fifty or so colleagues. He was taken to the Dallas County jail where he was "booked," fingerprinted and arraigned, bond having been set at $500. He was also permitted to call his home where he informed his daughter of the situation.

Since the incident had occurred in Fort Worth, Garris was transferred by the Dallas Police Department to the custody of Officer Rowland and driven to the Fort Worth Police Department for further pro-

who advised police. He stated the same situation with a subject fitting the same description was reported 3-8-78, 0800 hours.
4. Young female students envolved in encounter with the subject, all know to be reliable, can describe the man trying to get them to get into his car. How he asked them the location of other schools, Wedgewood Middel and Southwest High.
5. Same description given by complainant and children of the car and the man.
6. Registration received from Austin, named the subject as Walter E. Garris, and gave address of P. O. Box 153, Colleyville, (508 Field).

7. Colleyville Police checked address and found car fitting description also a green Ford with plates PJJ–970, in driveway—registering to Walter E. Garris, Jr.
8. Vehicle fitting description of vehicle PJJ–969, was reported to have been seen outside Trinity Valley Private School just after incident at 6300 McCart, 3-9-78.
Witness my signature this 10th day of March, 1978.

/s/ G. F. Rowland
Affiant

cessing. In Fort Worth, Garris was again arraigned and bond was set at $1,000. He was informed that his failure to make bond would necessitate his spending the night in jail, and he was not given the opportunity to telephone his home to inform his family of the higher bail or his transfer to Fort Worth. Furthermore, Garris, who suffers from hypoglycemia, an illness which is complicated by stress and the absence of regular meals, had no access to his medication and was not able to eat until Officer Rowland provided him with a hamburger in the late afternoon. Garris was again processed into jail and was placed in a line-up where he was identified by Mrs. Massengale as the man she saw in the Westcreek area on March 9, 1978, the day after the alleged incident. Following the identification, Garris, who repeatedly maintained his innocence, was interrogated by the police where he learned for the first time that his activities on March 9, 1978, not March 3rd, were the object of the investigation. He still had not been informed of the suspected connection between the March 8th and March 9th reports.

While Garris was being processed at the Fort Worth Police Department, his wife and family remained frantic at home, trying to raise money for bail and waiting to hear from Garris. Finally, in the late afternoon, they proceeded to the Fort Worth Police Department. Having finished interrogating Garris, the police officers determined that he was an unlikely suspect, and they agreed to let him go home for the evening if he would return the following morning to take a polygraph test. Garris testified at trial that when released to his wife at the jail, Officer Rowland stated that their investigation found him to be "disgustingly clean."

### Day 5: The Innocent Man Suffers

On the morning of March 15, 1978, Garris returned to the police station to undergo a polygraph examination. In the course of preparing for the test, Garris learned for the first time from the examiner that the alleged offense took place on March 8, 1978, when Garris was some thirty miles from the Westcreek area. He passed the test satisfying the examiner that he was not in the Westcreek area on March 8th and that he had not spoken with or attempted to solicit a child on March 9th. Garris was subsequently released, and his file in the Fort Worth Police Department was marked "unfounded."

As misfortune would have it, Garris' problems were just beginning. Garris returned to work only to discover that in the short time since his arrest, news of the incident had spread throughout the various area offices of HUD including Dallas, Oklahoma City, and Tulsa.[4] Phone calls were received from each of these offices, and an inquiry had been launched by the investigating office of HUD into the circumstances surrounding his arrest. Garris was called before the Deputy Regional Administrator of HUD to account for the matter. In an attempt to clear up the confusion, a meeting of the staff of the Dallas Regional Office was called, and Garris related to each of them the unfortunate circumstances. In an effort to stem the calls being received from the field offices, Garris also spoke to a meeting of all regional administrators in the five-state area and again explained the improprieties of his arrest. Officer Rowland also wrote the investigating office of HUD to explain that the arrest was unfounded. Despite these efforts, Garris continued to receive inquiries about the arrest and evidence at trial suggested that the entire affair had no insignificant effect on Garris' physical and emotional stability.

Following his release Garris sought to have all records of his arrest expunged from the files of the Fort Worth Police Department. When these efforts proved unsuccessful, Garris filed this § 1983 action requesting relief in the form of $40,000 compensatory damages, $20,000 punitive

---

**4.** Garris' home office was the Dallas Regional Office of HUD which had jurisdiction over a five-state region. Garris was assigned to cover some six offices encompassing all of New Mexico and Oklahoma and approximately three-fifths of Texas.

damages, and pursuant to Article 55.01, Texas Code of Criminal Procedure, the expunction of records reflecting his arrest and detention. After trial on the merits, the jury returned a verdict awarding Garris $25,000 in damages. Judgment was entered awarding such damages and ordering expunction of police records.

## ISSUES

Defendants raise several issues for our consideration on appeal. Defendants allege (1) that the evidence presented at trial was legally insufficient to raise a jury issue on the Fourth Amendment violation; (2) that the district court erred in submitting to the jury the question of whether probable cause existed to effectuate an arrest in the absence of any proof or finding that the arrest warrant was legally invalid; (3) that the jury finding that Officer Rowland acted in good faith entitled him to qualified immunity from any personal liability; (4) that plaintiffs failed to establish any custom or policy of the Fort Worth Police Department which resulted in Garris' "unfounded" arrest; and (5) that the district court erred in ordering expunction of the police records. In the context of our analysis below, we review and dispose of each of these issues.

## WAS THERE A FOURTH AMENDMENT VIOLATION?

"The first inquiry in any section 1983 suit is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433, 439 (1979). Where no such deprivation has occurred, we need not inquire further into the state of mind of the defendant to determine if the defendant is somehow entitled to an official immunity. *Id.* See also *Smith v. Gonzales*, 670 F.2d 522 at 526 (5th Cir., 1982).

The Fourth Amendment to the United States Constitution provides in relevant part:

The right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, . . . .

"By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause." *Baker v. McCollan*, 443 U.S. at 142, 99 S.Ct. at 2693, 61 L.Ed.2d at 440–41. In the present case, the following special interrogatory was submitted to the jury and answered in the negative:

Do you find from a preponderance of the evidence that at the time Garris was arrested by Officer Rowland, there was probable cause upon which his arrest was based? [Answer: We do not.]

▇ Defendants assert that the district court erred as a matter of law when it submitted to the jury the issue of whether probable cause existed upon which to base Garris' arrest at least in the absence of a judicial finding that the arrest warrant itself was legally invalid.[5] As we discuss, *supra*, deficiencies in the affidavit were sufficient to invalidate the warrant; thus, even if it were error for the district court not to initially make a finding on its validity, such error was harmless. Additionally, defendant's argument ignores the fact that the circumstances leading up to Garris' arrest were substantially disputed. Where there is no conflict in evidence, the court may make its own legal determination of probable cause. *See, e.g., Banish v. Locks*, 414 F.2d 638 (7th Cir. 1969). But where facts relied upon to show probable cause in a § 1983 action are controverted, they must be resolved by the jury before controlling legal principles can be applied. It is axiomatic that the jury is the sole judge of the facts of the case. 47 Am.Jur.2d Jury § 3 (1969).

---

**5.** We note that defendants did not contemporaneously object to the court's submission to the jury of the probable cause issue. After trial, defendants objected in their Brief and Motion for Judgment, Renewed Motion for Judgment, and Motion for JNOV or New Trial.

The district court instructed the jury as following with respect to the question of probable cause:

> You are instructed that probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the persons to be arrested.
>
> You are further instructed that under the Fourth Amendment to the Constitution of the United States in order for a warrant to form the basis for a lawful arrest an affidavit in support thereof must make affirmative allegations that the affiant spoke with personal knowledge of the matters contained therein or it must indicate the sources for the affiant's belief; and must set forth sufficient basis upon which a finding of probable cause could be made that an offense has been committed and that the person to be arrested committed it. The affidavit may be based on personal observation of the affiant, or hearsay, or a combination thereof.
>
> You are instructed that a peace officer may make an arrest, or an affidavit leading to an arrest warrant, based upon information received from another person if the peace officer believes that person from whom he received his information to be reliable. Additionally, the person from whom the peace officer receives his information does not have to possess personal firsthand knowledge of that information.

At trial, both parties devoted much of their case to resolving the disputed question as to exactly what facts were before Officer Rowland at the time he drafted his affidavit. There was substantial disagreement over what had been related by the parties involved in the March 8th and 9th "incidents" to Principal Franklin to Officer Gillespie to Officer Rowland. The reliability of the sources for Officer Rowland's beliefs were at issue and the precise facts within Officer Rowland's personal knowledge were disputed. All of these facts were questions for the jury to decide and its resolution of the factual issues effectively disposed of the probable cause question. While submission of the ultimate issue to the jury is not necessarily the preferred method of disposing of the probable cause issue, we do not believe, in light of the instruction and the disputed facts, that the district court erred as a matter of law in this regard. The finding, therefore, that Garris was arrested without probable cause made out the Fourth Amendment violation providing the basis for this § 1983 action.

## IMMUNITY OF OFFICER ROWLAND

We next turn to the question of whether Officer Rowland in his capacity as a police officer for the City of Fort Worth is immune from liability for damages resulting from the constitutional deprivation. An official, such as a police officer, is entitled to a qualified immunity where he has acted with a good faith belief that his actions were within his lawful authority and that reasonable grounds existed for this belief based upon objective circumstances at the time he acted. *Douthit v. Jones*, 619 F.2d 527, 534 (5th Cir. 1980); *see also Barker v. Norman*, 651 F.2d 1107 (5th Cir. 1981). Since qualified immunity is an affirmative defense, it is the duty of the defendant to plead it, *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), and to establish his entitlement to official immunity. Once the official has established his entitlement by showing that he was acting in his official capacity and within the scope of his discretionary authority, the burden shifts to the plaintiff to breach the official's immunity by showing that the official lacked "good faith." *Barker v. Norman*, 651 F.2d at 1121. Good faith consists of both subjective and objective components. *Id.; Bogard v. Cook*, 586 F.2d 399 (5th Cir. 1978), *cert. denied*, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979).

The subjective component of the test "requires that a plaintiff show that the official's action, although labeled as 'reckless' or 'grossly negligent,' falls on the actu-

al intent side of those terms, rather than on the side of simple negligence." *Bogard v. Cook*, 586 F.2d at 412. In the case before us, the jury, in response to two special interrogatories, found that Officer Rowland (1) had a reasonable good faith belief that his conduct was lawful and (2) did not act with knowledge or with reckless disregard of violating a constitutional right. These jury findings effectively dispose of the "subjective" prong to the test for qualified immunity. These findings by the jury establish that Officer Rowland did not act maliciously or intentionally when he misstated in the affidavit that someone had attempted to "get [the children] to get into his car" and when he failed to indicate on the affidavit that his information was fourth-hand hearsay.

The objective component of defendant's "good faith" concerns "the reasonableness of the official's actions under clearly established law at the time he acted." *Barker v. Norman*, 651 F.2d at 1121. In *Bogard*, we explained this standard as follows:

> [A]n official is liable under section 1983 "if he knew or *reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights" of the person affected. The fulcrum ... is the existence, at the time of the official's action, of clearly established judicial decisions that make his action unconstitutional.

586 F.2d at 411 (citation omitted; emphasis added), quoting *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975). In a similar manner we have described this standard stating that qualified immunity is not available to an official whose actions, regardless of his intent, controvert settled, undisputable law. *Douthit v. Jones*, 619 F.2d at 533; *see also, Smith v. Gonzales, supra.*

Plaintiff asserts that Rowland is not entitled to a qualified immunity since his preparation and presentation of the affidavit upon which the warrant issued did not comply with constitutional requirements set forth in *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Garris raises both facial and subfacial challenges to the validity of the affidavit which he claims, if existing, require a finding that Rowland failed to comport with "settled, undisputable law" and is therefore without immunity to liability. We believe, however, the jury's findings preclude plaintiff from establishing this claim with respect to Officer Rowland.

■ We turn first to Garris' facial challenge noting that although we remain aware of the civil nature of this action, our analysis requires us to delve into the annals of criminal law for resolution of this issue. In *Aguilar v. Texas, supra*, the Supreme Court set forth a two-prong test for evaluating the sufficiency of hearsay affidavits to establish probable cause. Plaintiff asserts that Officer Rowland's failure to fully apprise the magistrate of the basis of his beliefs and his failure to let the magistrate know that he did not have personal information as to the events described in the affidavit precluded the magistrate from making the independent determination as required by *Aguilar* that probable cause for the issuance of the warrant existed. Inherent within the test of *Aguilar* is the requirement that the affiant set forth in the affidavit the source of his information, that is to say, whether such information is the product of personal knowledge or informed sources. Indeed, in *Aguilar*, the absence of an affirmative allegation that the affidavit was based on personal knowledge of either the affiant or informant vitiated the affidavit's validity. In this case, the affidavit does not reflect with respect to a portion of its contents whether such information was the product of affiant's personal knowledge or the product of hearsay sources.

■ The failure, however, of the affidavit to comport with *Aguilar* does not necessarily infer that Officer Rowland failed to comply with settled law so as to deny him qualified immunity. First, we note that an officer is not required to be a grammarian. As the Supreme Court noted in *United*

States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), "[Affidavits] are normally drafted by nonlawyers in the midst or haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Id.* at 108, 85 S.Ct. at 746, 13 L.Ed.2d at 689. In this case, the jury found that whatever error Officer Rowland made was the result of innocent or negligent mistake. Indeed the jury's finding of a *"reasonable* good faith belief" arguably establishes the objective good faith belief we defined in *Bogard,* quoted *infra. Cf. McNamara v. Moody,* 606 F.2d 621, 626 n.9 (5th Cir. 1979), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980). Furthermore, the facts established that after Rowland drafted the affidavit, he took it to the district attorney's office for review and approval. Finally, an analysis of *Aguilar* reveals that it contemplates a dual process whereby the affidavit is presented and the magistrate makes a determination of probable cause. The magistrate is empowered "to conduct a fairly vigorous inquiry into the accuracy of the factual affidavit supporting the warrant. He may question the affiant, or summon other persons to give testimony at the warrant proceeding." *Franks v. Delaware,* 438 U.S. 154, 166, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667, 679 (1978). These independent inquiries of the magistrate may supply the requisite information for fulfilling the requirement which we have labeled as "the essence of *Aguilar"*—facts which allow the magistrate to determine independently whether probable cause for the issuance of the warrant exist.

*United States v. Martin,* 615 F.2d 318, 323 (5th Cir. 1980). That *Aguilar* was not complied with in this case does not mean that Officer Rowland himself was responsible for the violation.[6]

 Plaintiff also argues that Rowland is not entitled to a qualified immunity because of the inaccuracies contained within the affidavit; this is a subfacial challenge to the affidavit. Defendants assert that this Court cannot reach this issue since, under the so-called "four corners" rule, a court will not look behind the allegations of an affidavit for an issuance of a warrant. In the context of a criminal proceeding, the Supreme Court, in *Franks v. Delaware, supra,* recognized the viability of subfacial challenges to affidavits in support of a warrant containing false or misleading statements.[7] The Court held that

... where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–56, 98 S.Ct. at 2676–77, 57 L.Ed.2d at 672. Under *Franks,* plaintiff's allegations that Rowland intentionally misrepresented certain facts in the affidavit would entitle him to a hearing (one which he substantially received by virtue of the trial), but he would lose on the merits of his challenge since the jury's findings reflect

---

**6.** Our conclusion in this regard is further supported, we believe, by that fact that we have traditionally held that the magistrate's determination of probable cause breaks the chain of causation and insulates the initiating party from liability. *See Smith v. Gonzales, supra; Rodriguez v. Ritchey, supra.* Plaintiff asserts that this form of quasi-judicial immunity would permit an officer to prepare an erroneous affidavit in order to obtain a warrant and then "hide behind" the erroneously issued warrant to escape liability for constitutional deprivations. Similar concerns were also expressed by Judge Hill in his concurring opinion in *Rodriguez*; however, even Judge Hill recognized

that the police officer's actions must be malicious or in bad faith, a situation not presently before us.

**7.** Contrary to plaintiff's assertions that "courts have traditionally, both before and after *Franks,* when appropriate, examined the basis upon which warrants have issued," the rule in this Circuit now follows that set forth in *Franks* thereby modifying procedures permitting subfacial challenges prior to *Franks. See United States v. Martin,* 615 F.2d at 328 n. 14; *United States v. Astroff,* 578 F.2d 133 (5th Cir. 1978) (en banc).

that Officer Rowland acted in good faith and without knowledge or reckless disregard of the fact that he was violating a constitutional right. As we stated in *United States v. Martin*, 615 F.2d at 329, "negligent omissions will not undermine the affidavit," and in this case, the jury findings indicate that Rowland acted negligently, not intentionally or recklessly. Accordingly, neither plaintiff's facial or subfacial challenge to the affidavit warrants a finding that Officer Rowland himself is liable for its deficiencies so as to deny him qualified immunity.

## MUNICIPAL LIABILITY

We turn next to the question of whether the defendant City of Fort Worth should be held liable for the unlawful arrest. In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court reversed longstanding precedent and found that municipalities were "persons" subject to suit under § 1983. We recently summarized the Court's holding as follows:

In *Monell* ..., the Supreme Court held that a municipality may be sued for damages under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels." Thus, *Monell* imposes liability on municipalities for deprivations of constitutional rights undertaken pursuant to municipal policy, whether officially promulgated or authorized by custom.

*Berry v. McLemore*, 670 F.2d 30 (5th Cir. 1982). *Monell* further holds that a municipality may not be held liable "*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036, 56 L.Ed.2d at 636 (emphasis in original). The principal inquiry in an action such as this is

whether there existed a municipal policy or custom that, when carried out, inflicted injury upon the plaintiff. *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1323 (5th Cir. 1980).

In the present case, the following special interrogatories were affirmatively answered by the jury:

Do you find from a preponderance of the evidence that on the occasion in question defendant Rowland was acting in accordance with the custom, policy and procedure of the Fort Worth Police Department in obtaining the warrant for plaintiff's arrest and in executing such warrant? [Answer: Yes]

Do you find from a preponderance of the evidence that the employees of the defendant City of Fort Worth acted in accordance with the custom, policy and procedure of the Fort Worth Police Department in the creation and maintenance of the records reflecting the arrest and detention of plaintiff Garris? [Answer: Yes]

Based upon these findings, the district court entered judgment against the City of Fort Worth. Defendants objected to each of these special interrogatories on the grounds that they were too general and did not inquire whether any city policy or custom brought about the injury to the plaintiff. Arguably, the jury's findings are subject to differing interpretations; therefore, we turn to the record to determine if the evidence supports the district court's entry of judgment against the defendants.

Initially, the evidence establishes, and no party disputes, that the manner in which and the extent to which the investigation in this case was performed was in full accordance with the custom and policy of the City of Fort Worth Police Department. Chief of Police A. J. Brown and Officer Rowland both testified to this. Secondly, the record reveals that it was the procedure of the police department to obtain a warrant based upon probable cause and to arrest a suspect such as Garris even though further investigation to determine if sufficient facts existed to formally file a

charge against the arrestee was contemplated. Although the evidence did not establish that it was the policy of the police department to obtain arrest warrants by making material misrepresentations on supporting affidavits, Chief Brown testified that Rowland's affidavit [although erroneous] comported with department policy both (1) procedurally in terms of the manner in which it was drafted and presented to the magistrate and (2) substantively in terms of the manner in which information was obtained and related in its contents. The record also reveals that although Officer Terrell, through his follow-up investigation, was aware that no solicitation had occurred, department policy only required that his follow-up report be placed into the computer files. There was no policy or method providing for cross-referencing of information within the department to prevent "unfounded" arrests such as occurred here,[8] nor was there a policy providing for the follow-up investigator (Terrell) to check with the original investigator (Barton), who in this case was aware of Rowland's intention to arrest Garris and could have prevented such action. In summary, the record establishes that during this entire police operation, leading up to Garris' unlawful arrest, numerous mistakes occurred, all of which resulted from various officers carrying out the policies and procedures of the Fort Worth Police Department.

8. Although the computer filing of reports was one method of cross-referencing, evidence indicated that department policy required no immediacy in drafting and entering these reports into the computer. Officer Terrell's investigation took place on March 10th or 11th, several days before the arrest. His report was not drafted until March 15th, the day after the arrest, and was not entered into the computer until August 11th, three months after the arrest.

9. Article 55.01 of the Texas Code of Criminal Procedure reads as follows:
"Art. 55.01. Right of Expunction.
A person who has been arrested for commission of either a felony or misdemeanor is entitled to have all records and files relating to the arrest expunged if each of the following conditions exist:
(1) an indictment or information charging him with commission of a felony has not been presented against him for an offense

In *Monell*, the Supreme Court stated that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037, 56 L.Ed.2d at 638. In so holding, that court emphasized that it was not addressing "what the full contours of municipal liability under § 1983 may be." *Id.* We believe the facts of this case support the jury's findings and support the conclusion that the City of Fort Worth is liable to Garris for the damages incurred.

## EXPUNCTION OF RECORDS

Finally, defendants assert that the district court erred in granting plaintiff's request for expunction of all arrest records since (1) plaintiff failed to exhaust state remedies in this regard and (2) plaintiff "failed to allege the requisite exceptional circumstances to invoke the court's narrow jurisdiction in this area." The parties stipulated at trial that the facts of this· case would support an order of expunction pursuant to Article 55.01, Texas Code of Criminal Procedure.[9] Although Garris pled that the district court had pendent jurisdiction

arising out of the transaction for which he was arrested or, if an indictment or information charging him with commission of a felony was presented, it has been dismissed and the court finds that it was dismissed because the presentment had been made because of mistake, false information, or other similar reason indicating absence of probable cause at the time of the dismissal to believe the person committed the offense or because it was void;
(2) he has been released and the charge, if any, has not resulted in a final conviction and, is no longer pending and there was no court ordered supervision under Article 42.-13, Code of Criminal Procedure, 1965, as amended, nor a conditional discharge under Section 4.12 of the Texas Controlled Substances Act (Article 4476–15, Vernon's Texas Civil Statutes); and
(3) he has not been convicted of a felony in five years preceding the date of arrest.

over this claim, defendants assert that the district court could not exercise such jurisdiction since plaintiff had not first presented this claim to a state court thereby exhausting his state remedies. Without citing any authority defendants argue that "if exhaustion is required for *habeas corpus,* surely it must be required for expunction." We fail to see any merit to defendants' analogy and decline, therefore, to follow it.

 The district court properly exercised its discretionary authority to assume pendent jurisdiction over Garris' request for expunction pursuant to state law. It is clear that plaintiff's claim of a constitutional deprivation was a substantial federal claim which predominated the issues and proof at trial; his state claim was secondary. Furthermore, considerations of judicial economy warranted exercise of jurisdiction to avoid requiring plaintiff to bring a separate proceeding in another court to resolve an issue which both parties agreed was controlled and could be disposed of pursuant to Article 55.01. Finally, while this court has declined to assume an equitable or constitutional basis on which to order expunction of criminal records, except in extraordinary circumstances,[10] these cases do not involve a situation where a party was entitled to expunction as a matter of right under pendent state law. They are simply inapposite. The district court did not err in ordering expunction of the arrest records.

## CONCLUSION

The instant case truly presents an unfortunate circumstance where an innocent man was injured by the actions of a policeman attempting to carry out his duty in good faith. It is alarming when one realizes that this unlawful arrest should have never occurred. We recognize that the Constitution does not guarantee that only the guilty will be arrested, *Baker v. McCollan,* 443 U.S. at 145, 99 S.Ct. at 2695, 61 L.Ed.2d at 442, but neither are the discretionary actions of our police exempt from limited judicial review. In reviewing this case, we have kept in mind the delicate balance between the rights of the citizenry to be protected from uncontrolled, unlawful police action and the necessity that police officers have the discretion and flexibility to act free from the burdens imposed by the threat of civil liability. In accordance with our views expressed herein, the judgment of the district court is AFFIRMED except to the extent that it imposes liability upon Officer Rowland. We find that Officer Rowland is entitled to qualified immunity.

AFFIRMED IN PART; REVERSED IN PART.

---

**10.** *See, e.g., Cavett v. Ellis,* 578 F.2d 567 (5th Cir. 1978); *Rogers v. Slaughter,* 469 F.2d 1084 (5th Cir. 1972).