**Clarence VON WILLIAMS**

v.

**CITY OF BRIDGE CITY, TEXAS, et al.**

**Civ. A. No. B–82–161–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

June 20, 1984.

**1188**

Donald B. Kelley, Dunn & Kelley, Orange, Tex., for plaintiff.

John W. Newton III, Orgain, Bell & Tucker, Beaumont, Tex., for defendants.

---

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

Before the Court is Defendants' 12(b)(6) motion to dismiss this cause for failure to state a claim for which relief can be granted. Since the parties have introduced material that is outside the pleadings, the motion shall be treated as one for summary judgment under Fed.R.Civ.P. 56.[1] Plaintiff, Clarence Von Williams, has brought this case pursuant to 42 U.S.C. Sections 1983, 1985, and 1986, alleging that the City of Bridge City, Texas, its city manager, and two of its police officers deprived him of his civil rights when he was arrested, prosecuted, and convicted for a crime another man later confessed to having committed. Since this Court finds, as a matter of law, that Clarence Von Williams is barred from bringing this Federal cause of action, the Court will order that summary judgment be entered for the defendant City and its officers. The Court's reasoning follows:

### I. THE FACTS

On April 30, 1979, someone brutally raped a woman and her daughter at gunpoint in the woman's home, and then sexually abused the woman's teenaged son. The rapist—who wore a ski mask—blindfolded his victims, but they later testified

---

**1.** Oral hearing was held on this motion on June 5th, 1984, pursuant to Fed.R.Civ.P. 12(d). Approximately a week was given to the parties to further supplement their positions. Plaintiff has now moved to continue the court's adjudication of the matter until such time as all grand jurors involved in the Von Williams' case can be contacted and deposed. The court will deny this motion, since, as stated in the opinion, it believes the testimony of the individual grand jurors would not affect the legal issue in this case.

that they were able to catch glimpses of him underneath their blindfolds. The victims identified the assailant as being a white male approximately five feet ten inches tall, as having either dark brown or black hair with a mustache, and weighing approximately 180 to 200 pounds, and stated that the assailant looked like Clarence Von Williams.

Bridge City Police arrested Von Williams in May, 1979. Von Williams asserted his innocence of the crime and contended he had been out drinking the night of the incident. Von Williams was charged by the police, and indicted by the Orange County Grand Jury. Von Williams' case went to trial twice in 1981. The first trial ended in a mistrial when the jury deadlocked at nine to three for conviction. At a second jury trial in October, 1981, a jury convicted Von Williams of aggravated rape and sentenced him to fifty years in prison. At both trials, all three crime victims identified Von Williams as the rapist.

Still protesting his innocence, Von Williams was committed and began serving his sentence. Only a short time later, however, a man named Jon Barry Simonis, known as the "Ski-Mask Rapist" confessed to more than 80 rapes, including the ones for which Von Williams had been convicted. All charges against Von Williams were dismissed.

Von Williams then filed this suit in Federal Court, contending that had Bridge City and its police officers conducted a proper investigation and prosecution, his innocence would have been apparent from the start. Von Williams claimed the police officers failed to discover evidence at the crime scene, manipulated evidence to make him appear guilty, and even destroyed exonerating evidence. These actions, Von Williams asserts, infringed upon his Constitutional rights.

## II. ANALYSIS: PROBABLE CAUSE AND THE RULE OF RODRIQUEZ V. RITCHEY

■ Von Williams' claim in this case is based on 42 U.S.C. 1983.[2] A claim under this statute requires, as a threshold matter, that the plaintiff establish a deprivation of a right, privilege, or guarantee secured by the Constitution and laws of the United States. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). In the instant case, Von Williams contends his arrest and conviction violated his Fourth and Sixth Amendment rights. The Fourth Amendment requires the states to provide a fair and reliable determination of probable cause before any restraint of liberty takes place. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The Sixth Amendment guarantees the accused in a criminal proceeding the right to a fair trial. These Amendments apply to states and their municipalities by virtue of their incorporation into the Fourteenth Amendment, and are enforced by statutes such as Section 1983. This Court considers only the Fourth Amendment claim, as its resolution is determinative here of both Constitutional issues.[3]

Not surprisingly, Section 1983 actions involving mistaken identity, unlawful arrest and false imprisonment are not new. Indeed, in 1977, the Fifth Circuit, *en banc,* decided the case of *Rodriquez v. Ritchey,* 556 F.2d 1185 (5th Cir.1977) (*en banc*), *cert. denied* 434 U.S. 1047, 98 S.Ct. 894, 54

**2.** For purposes of substantive analysis, this opinion will consider Von Williams' Section 1985 and Section 1986 claims along with the Section 1983 assertion. These civil rights statutes also require the infringement of a Federally protected right. *See United Brotherhood of Carpenters et al. v. Scott,* — U.S. —, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). *See also Hamilton v. Chaffin,* 506 F.2d 904, 913–14 (5th Cir.

1975) (dependency of Section 1985 action on Section 1986 cause).

**3.** Plaintiff's complaint, on file since March 1, 1982 and never amended, raises no independent Sixth Amendment claim. An original defendant in this action was John T. Montford, the special prosecutor who prosecuted Von Williams' second trial. This court, however, dismissed Mont-

L.Ed.2d 799 (1978).[4] In *Rodriquez*, the court faced a somewhat similar fact situation. A false arrest action had been brought against six FBI agents who had misidentified plaintiff as a gambling suspect, resulting in plaintiff's arrest and grand jury indictment. The District Court dismissed, and despite the many mistakes and errors by the agents, the Fifth Circuit affirmed the dismissal. In doing so, the Court held:

"... [J]ust because a person validly arrested is later discovered to be innocent does not make the arrest 'unlawful' for Fourth Amendment purposes. To the contrary, *it has long been settled that an indictment by a properly constituted grand jury conclusively determines the existence of probable cause and provides the authority for an arrest warrant to issue.*"

*Rodriquez v. Ritchey*, 556 F.2d at 1191. (emphasis added.) The *Rodriquez* court then laid out a general outline of what its philosophy was in such false arrest/false imprisonment cases:

First, and most basically, an arrest made under authority of a properly issued warrant is simply not a 'false' arrest, it is a 'true' or valid one. Second, if the facts supporting an arrest are put before an intermediate such as a magistrate or grand jury, the intermediate's decision breaks the causal chain and insulates an initiating party. Third, the general rule is that one who is engaged merely in investigative work is not liable for a resulting false arrest, even if he acted maliciously.

*Rodriquez v. Ritchey, supra*, at 1193–94. Two distinguished judges of the panel, Hill and Gee, concurred in the result, but wrote separately to state that they could not agree that the grand jury indictment conclusively immunized the arresting officers from suit. These judges believed that

ford on the grounds of prosecutorial immunity on April 29, 1982.

**4.** Of course, the *Rodriquez* opinion was issued by the "old" Fifth Circuit, which has since been divided into the Fifth and Eleventh Circuits.

should an officer act maliciously or in bad faith in obtaining a grand jury indictment, then the officer should be liable. *Id.* at 1194–95.

The *Rodriquez* decision has not been without its detractors. Indeed, it appears that some other Federal Circuits are at variance with it. Nevertheless, it is the law in this circuit and because of it, Von Williams' case must be dismissed.

■ Von Williams' allegations concerning the police officers are worthy of note insofar as they point up the reason why *Rodriquez* is applicable. Von Williams states the police officers violated his rights because they, among other things: "failed to discover evidence at the scene of the crime ... allowed evidence to be destroyed ... failed to properly investigate the crime ... manipulated evidence to make plaintiff appear guilty ... seized articles of clothing from plaintiff's home which did not match that identified by complainant ... [and] engaged in identification procedures calculated not to identify the assailant but to incriminate the plaintiff." Assuming, arguendo, that these charges are true,[5] the actions can be characterized as either negligent or intentional. If these actions were negligent, then there is still not enough to make out any Constitutional claim. The Constitution does not require police officers to conduct an error-free investigation of a crime. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979.) To allow a cause of action for negligent conduct would have a "chilling effect" on law enforcement efforts. Negligent conduct, therefore, is simply not actionable. *See Clayton v. Prudential Ins. Co.*, 554 F.Supp. 628, 632 (S.D.Tex.1982, Sterling, J.); *Cf. Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Rodriquez v. Ritchey, supra*.

**5.** *See Marrero v. City of Hialeah*, 625 F.2d 499, 502 (5th Cir.1980). (consideration of motion to dismiss requires court to accept allegations of complaint as true.)

This leaves the plaintiff's allegations that the police officers acted maliciously and intentionally—in essence, in bad faith. Even if this were proved, *Rodriquez* states that the grand jury's indictment of Von Williams means conclusively there was probable cause, and thus no Fourth Amendment violation. Furthermore, the officers themselves could be immunized even under a different theory. In *Smith v. Gonzales*, 670 F.2d 522 (5th Cir. 1982), the court held that even assuming that an officer had acted maliciously in procuring a warrant from a grand jury, thus resulting in a false arrest, the second principle enunciated in *Rodriquez* would grant the officer immunity. This principle, as stated by the *Smith* court, is: "if the facts supporting an arrest are put before an intermediary such as a magistrate or grand jury, the intermediary's decision to issue a warrant or return an indictment *insulates the initiating party.*" *Smith v. Gonzales, supra* at 526, *citing Rodriquez v. Ritchey*, 556 F.2d at 1193. (emphasis added). When the grand jury indicts, responsibility passes from the officers to it. Ultimately, it is the decision of the jury that will determine the merits of the charge against the criminal defendant. Thus, as in *Smith*, the independent decisions of these intermediaries break the causal chain between the Bridge City Police Officers and any Constitutional violation.

Von Williams has stated to the court that the case of *Smiddy v. Varney*, 665 F.2d 261 (9th Cir.1981), *cert. denied*, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982) is "remarkably similar" and should control here. While *Smiddy* is somewhat similar, its facts are significantly different. *Smiddy* concerned a man arrested for murder whose case was later dismissed for lack of sufficient evidence. He sued the arresting officers and others, and obtained a jury verdict in a district court. The Ninth Circuit let the verdict stand but remanded in part for a determination of whether a district attorney's filing of a criminal com-

plaint broke the causal chain. *Id.* at 266–67. *Smiddy*'s law is different also. There the intermediary's action did not absolutely break the chain; it merely presented a presumption that could be rebutted by showing an officer's misconduct in presenting evidence to the intermediary. *Id.* Yet *Smiddy* is not the law in the Fifth Circuit. As noted by no less an authority than Justice White, in comparing *Smiddy* with *Smith v. Gonzales*, the Fifth Circuit rule is that "an officer cannot be liable even if, by wrongful means, he taints the independent judgment of the grand jury, magistrate, prosecutor, or other intermediary." *Smith v. Gonzales*, 459 U.S. 1005, 1006, 103 S.Ct. 361, 362, 74 L.Ed.2d 397 (1982) (White, J., dissent from denial of certiorari).

Von Williams has also cited to the court the case of *Garris v. Rowland*, 678 F.2d 1264 (5th. Cir.1982). In *Garris* the Fifth Circuit upheld the imposition of liability against a city and a police department for an unlawful arrest. There are significant differences between *Garris* and the instant case. In *Garris* the court made the specific finding that there was no probable cause to arrest. In the instant case, as stated before, Von Williams' grand jury indictment is conclusive on that issue. While imposing liability on the city and police department, the court dismissed the police officer involved, in part because a magistrate's determination of probable cause broke the causal chain. *Garris v. Rowland*, 678 F.2d 1264 at 1273.

Furthermore, in *Garris*, the city's liability was upheld on the basis of its custom and policy, as allowed by *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1982). In *Garris*, there was no grand jury indictment; merely an action by a Tarrant County Magistrate. It appears that the court did not address the issue of whether that intermediary's action broke the causal chain for the city. It is possible, in the circumstances, that the *Garris* court considered the magistrate's actions attributable to the city's policy.[6] There is no question here

---

**6.** Indeed, in dealing with this issue in regard to

the police officer's liability, the *Garris* court

that the Orange County Grand Jury was a wholly separate entity from the City of Bridge City. This Court interprets *Rodriquez* to say that a grand jury indictment breaks the causal chain and insulates all "initiating parties" from suit: including the City of Bridge City.

In sum, then, there has been no Fourth Amendment violation. Even had there been, the chain of causation has been broken, insulating the actors from liability. There is sound judicial policy underlying this decision. This Court need only quote Justice Rehnquist's words in *Baker v. McCollan supra:* "The Constitution does not guarantee that only the guilty will be arrested. If it did, Section 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released." 443 U.S. at 145, 99 S.Ct. at 2695. Such a result would cause a Federal court to second-guess the actions of law enforcement officials in almost every conceivable arrest situation. This would present an intolerable situation and cannot be allowed.

## CONCLUSION

As a matter of Federal jurisdiction, Von Williams has no cause of action. The Fifth Circuit's decision in *Rodriquez v. Ritchey* compels a conclusion that the grand jury indictment conclusively establishes that there was no actionable violation of the Fourth Amendment, and thus no Constitutional infringement. Therefore, Von Williams has not stated a claim for which this Court can grant relief. It is therefore

ORDERED, ADJUDGED, AND DE-CREED that this cause be and is hereby DISMISSED pursuant to Fed.Rule Civ.P. 56(b).

relegated its discussion of *Rodriquez v. Ritchey* and *Smith v. Gonzales* to a footnote. Its main discussion centered on the officers' qualified "good faith" immunity. *Rodriquez* and *Smith* were cited only as "further support ...". *Garris, supra,* at 1273, fn. 6.