**Joey Leon SMITH, Plaintiff–Appellant,**

v.

**Jeff THORNBURG, et al., Defendants–Appellees.**

No. 96–6456.

United States Court of Appeals,
Sixth Circuit

May 15, 1998.

Before KENNEDY, NELSON, and CLAY, Circuit Judges.

AMENDED ORDER

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and de-

cision of the case. Accordingly, the petition is denied.

CLAY, Circuit Judge, dissenting from the denial of rehearing.

I respectfully dissent from the panel's decision to deny rehearing in this case. Rehearing is warranted in connection with this appeal because the case involves an issue of exceptional importance: Whether an aggrieved person's right to trial can be summarily abrogated in the face of substantial unresolved factual disputes concerning serious allegations of police misconduct motivated by race. *See* Fed.R.App.P. 35. With all due respect to my fellow judges, it is my firm belief that by denying rehearing and allowing this decision to stand, a chilling effect will be had on the civil redress afforded to the citizens of the City of Knoxville and to this country as a whole. My original dissent in this case best describes the constitutionally significant disputes which remain for trial; however, I will briefly outline those issues as follows.

### 1.) Probable Cause to Conduct a Warrantless Search of the Vehicle.

As stated by the majority, "[p]ursuant to the automobile exception to the warrant requirement, an officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime." *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998). Probable cause is defined as " 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.' " *Id.* (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990).)

The majority concluded that, under the circumstances, Defendants had probable cause to believe that the Dodge Stealth may have been a stolen vehicle, and the police were therefore justified in entering the vehicle to determine the identity of the owner or to determine whether someone had tampered with the vehicle. However, this conclusion was not remotely supported by the facts, inasmuch as the testimony from Defendants regarding their basis for searching Plaintiff's vehicle was grossly inconsistent. For exam-

ple, when first interviewed by the Internal Affairs Unit, Defendants Slagle and Line indicated that the search of the vehicle was conducted incident to the arrest of a suspect who had been taken into custody within ten feet away from the vehicle. However, these statements lack credibility because they conflict with these Defendants' subsequent deposition testimony to the effect that the search was conducted because Plaintiff's car appeared to be an abandoned, stolen vehicle. On the other hand, Plaintiff offers consistent and credible testimony which directly conflicts with that of the police officers. Therefore, genuine issues of fact remain for trial regarding the basis upon which Defendants conducted the search; specifically, whether Defendants believed that the driver of the vehicle in question had just been arrested; whether Defendants believed that the car was an abandoned, stolen vehicle; or whether the reasons given for the search were pretextual because the search was motivated by Plaintiff's race—in view of Plaintiff's witnesses differing version of the factual circumstances leading to the search and in view of the police officers' constant references, in their testimony, to the predominantly Africa-American neighborhood where the search occurred as a "high crime" area (the officers' constitutionally impermissible justification for the search). *See Garris v. Rowland,* 678 F.2d 1264, 1270 (5th Cir.1982) (where facts regarding the determination of probable cause are inconsistent, it is axiomatic that they be resolved by the jury).

Even assuming, for the sake of argument, that the factual basis regarding Defendants' belief was not in dispute, a genuine issue of fact remains as to whether Defendants' belief (whatever it may have been) rose to the level of establishing probable cause. Simply put, a genuine issue of fact remains as to whether Defendants' reason to search the vehicle constituted probable cause or a mere suspicion. *See United States v. Ferguson,* 8 F.3d 385, 392 (6th Cir.1993). For example, the majority relies on the following circumstances in concluding that probable cause existed: the vehicle was unoccupied and parked haphazardly; the headlights were on; the engine was running; the radio was turned on; the

doors were unlocked; and stolen vehicles, according to Defendants, are frequently left in this condition. However, given the fact that there was significant human activity in the immediate vicinity of the vehicle at the time, these circumstances support an inference that the vehicle had been momentarily left by its owner as much as they support an inference that the vehicle had been stolen. In addition, Defendants' belief that the car was abandoned is entirely speculative where the facts indicate that Plaintiff left the vehicle for two minutes with the doors closed, windows up, and alarm set. Under these facts, one might safely assume that Plaintiff had a reasonable expectation of privacy in his vehicle and, as such, that Defendants conducted an improper warrantless search. *See United States v. Tolbert,* 692 F.2d 1041, 1044 (6th Cir.1982).

Furthermore, the credibility of the police officers' testimony, and any indication that they were acting in good faith, is entirely lacking when one considers that, before proceeding with the search, the officers did not take a moment to conduct the most cursory inquiry of neighborhood residents in proximity to the vehicle to determine if the owner was nearby, nor did they call in the license plate number to determine whether the vehicle had been reported stolen. In addition, the officers' credibility is further called into question when one considers that, after their initial search indicated that the ignition had not been tampered with, they continued to search the vehicle.

Finally, as previously indicated, the majority relies upon Defendants' contention that the incident took place in a "high crime" area to support a finding of probable cause. However, that contention was unsubstantiated, and therefore calls into question whether Defendants were motivated to search the vehicle based upon a definite probability, or based upon a mere suspicion grounded in biased beliefs.

## 2.) Probable Cause to Arrest Plaintiff for Assault

The majority found that Plaintiff's claim under § 1983 for malicious prosecution must be dismissed because probable cause existed, as a matter of law, for Defendants to arrest Plaintiff for assault. However, in construing the evidence in the light most favorable to Plaintiff, genuine issues of fact exist as to whether Plaintiff held a justified defense to the assault under Tenn.Code Ann. § 39–11–614(a) (1997) and, thus, whether the arrest was proper.

For example, Plaintiff alleged that, after his alarm pager went off alerting him that someone had entered his vehicle, he ran toward the car shouting, "Hey, Hey, my car. Who is in my car? Hey, Hey;" Plaintiff provided the intruder an opportunity to explain or leave; and then used as little force as possible to remove the intruder (who was dressed in all black without visible police insignia and stretched across the seat looking into the glove compartment) from the vehicle. Under these facts, reasonable minds could differ as to whether Plaintiff knowingly assaulted a police officer, whether his justification defense was applicable, whether probable cause existed for Defendants to arrest Plaintiff, and therefore, whether Plaintiff's claim for malicious prosecution remained viable.

## 3. False Imprisonment/False Arrest

The majority found that, because Defendants had probable cause to arrest Plaintiff, summary judgment of his claim for false imprisonment/false arrest was in order. However, as stated above, genuine issues of fact remain as to whether Defendants had probable cause to arrest Plaintiff for assault. Accordingly, his claims for false imprisonment/false arrest should survive summary judgment.

## 4. 42 U.S.C. § 1985 Conspiracy

The majority found that there was no evidence of a conspiracy to deprive Plaintiff of his constitutional rights. However, the record is replete with allegations that, as Plaintiff was being arrested, Defendants called him a "nigger," a "drug dealer," and a "black motherfucker." Evidence of racial slurs and harassment are sufficient to establish a conspiracy to verbally harass Plaintiff because of his race in violation of § 1985(3). Therefore,

summary judgment on this claim was inappropriate.

### 5. Qualified Immunity

The majority erroneously found that, even if one assumes that the warrantless search of the vehicle on private property was in violation of the Fourth Amendment, the officers' reasonable mistake of fact in believing that the car was on public property would protect them under qualified immunity. However, this finding is dependant upon whether Defendants had probable cause to search the vehicle in the first place; therefore, as previously stated, this remains a viable issue. Furthermore, as previously noted and discussed in the dissent, an issue of fact remains as to whether Defendants had probable cause to arrest Plaintiff. Accordingly, genuine questions of material fact remain as to whether qualified immunity applies in this case. *See Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir.1995).

I also wish to emphasize the erroneous and presumptive basis upon which the majority appears to have made its decision on the above issues; namely, that there is a lower standard for probable cause—which allows police officers to search and arrest without a warrant, and to subject persons of color to unwarranted brutality—when an alleged crime occurs in a low-income neighborhood. As noted in my dissent, this unacceptable presumption seems to be based upon the stereotypical belief that the incidence of crime is disproportionately high in such neighborhoods. This presumption cannot be embraced where it leads to a rush to "justice" based upon nothing more than color and status—especially when the use of vile racial slurs and excessive force clearly indicates racial animosity.

By denying rehearing, the majority has conveyed the unacceptable message that officers serving in low-income areas predominately inhabited by minority group members may perpetuate police misconduct based upon race without regard to the constitutional rights of their victims. Although police offers must be afforded the authority necessary to maintain the peace and enforce the laws of our land, such truism must be balanced against the very freedoms and liberties upon which this country was built.

The reasoning of the majority's opinion is wrong as a matter of law and the entry of summary judgment in this case prematurely aborts a citizen's substantial claims of serious violations of constitutional rights. For the above stated reasons, I respectfully dissent from the panel's decision not to correct this egregious result.